UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| DOUGLAS COOK, | : | Case No. 3:11-cv-132 |
| Plaintiff, | : | Judge Timothy S. Black |
| vs. | : | |
| PATRICK R. DONAHOE, Postmaster General, United States Postal Service, | : | |
| Defendant. | : | |

**DECISION AND ENTRY GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DOC. 14)**

This civil case is before the Court on the Motion for Summary Judgment (Doc. 14) filed by Defendant Patrick R. Donahoe, Postmaster General of the United States Postal Service ("Defendant"). Plaintiff filed a Memorandum Contra Defendant's Motion for Summary Judgment. (Doc. 16). Defendant filed a Reply in Support. (Doc. 18). Defendant's Motion is now ripe for decision by the Court.

**I. FACTS**

Plaintiff Douglas L. Cook ("Plaintiff"), an African American male, worked for Defendant from 2000 to 2011. Plaintiff began his employment with the Postal Service as a part-time flexible ("PTF") Mail Processing Clerk in Dayton, Ohio. Plaintiff remained in the position of PTF Clerk during his entire tenure at the Postal Service. Plaintiff's job duties included processing mail using automated mail processing equipment or manual methods of sorting and distribution.

On 2005, Plaintiff reported a work-related back injury caused by continuous lifting, sorting and throwing mail. According to Plaintiff, his back injuries affected his nerves and right leg, caused radicular symptoms, right leg weakness, numbness and tingling, daily muscle spasms, sleep disorder, anger problems, isolation, trust issues, stress, depression and anxiety. In 2007, Plaintiff's physician, Scott West, D.O., imposed permanent work restrictions on Plaintiff and certified that Plaintiff was to work only six hours a day indefinitely. Defendant accommodated Plaintiff's restrictions and gave him a limited duty assignment at the Fairborn Post Office.

In 2008, the Postal Service began undergoing a National Reassessment Process ("NRP") in which it identified assignments of necessary and recurring work for partially- recovered disabled employees. On February 7, 2008, the Postal Service informed the Plaintiff of the results of reassessment concerning Plaintiff's PTF Clerk position to better account for his permanent restrictions. Plaintiff was offered a Rehabilitation Modified Duty Position that provided him with six days of work each week for four hours a day. The modifications of his position accounted for the Plaintiff's restrictions as certified by Dr. West. Plaintiff accepted the modifications proposed as a part of the reassessment.[1]

The Post Master at the Fairborn Post Office at that time was Cynthia Miegel. Plaintiff acknowledges that Miegel and other Postal supervisors gave him oral feedback indicating that he was doing a "great" job. From September 7, 2010 until the Plaintiff

---

[1] In his Memorandum Contra, Plaintiff, without citation to the record, claims that he accepted the modifications under duress.

- 2 -

retired from the Postal Service, Defendant gave Plaintiff more than the four hours of work a day that his Rehabilitation Modified Duty Position offered.  Plaintiff worked approximately six hours a day, the maximum amount of time that his restrictions on hourly work permitted.  Plaintiff's timesheets demonstrate that between September 7, 2010 and Plaintiff's retirement on June 23, 2011, Plaintiff received approximately thirty to thirty-six hours of work each week, and when Plaintiff worked less, it is because he used annual or sick leave.  Miegel stated that at this time all of the employees who were assigned as PTF's were working five hours per day, like the Plaintiff.[2]  Plaintiff's hourly salary stayed the same after the modifications went into place, and never decreased.  Plaintiff received the same annual leave, sick leave, health insurance, life insurance and Thrift Savings Plan benefits after the modifications went into place.

      Throughout his tenure at the Postal Service, the Plaintiff was occasionally required to clock in under "353" standby time, meaning there was no work available for him to perform.  Plaintiff acknowledges that he was not required to clock into standby time for entire days.  In fact, there were times when the Plaintiff would be on standby time for periods as little as ten minutes.  Indeed, the Plaintiff testified that "Passports, return to sender mail, deceased mail, loop mail, speed lines, training people on the automated postal center, everything was still available.  My modified assignment was still there, I was still able to do my job."  Plaintiff never requested to be taken off standby time, even though it did annoy him, and just "did what [he] was told to do."

---

[2] While Plaintiff generally denies this fact, he points to no portion of the record disputing such fact.

Plaintiff contends that several white, disabled employees were given preference over him for performing work, stating in his deposition: "[s]o they [the Postal supervisors] were taking, she's disabled and I'm disabled so how do you take disability from, how do you take work from one disabled person and give it to another disabled person?  That's what this was about."  Plaintiff acknowledges that he received the same rate of pay and benefits for all work performed at the Postal Service, regardless of the category of work performed.  According to Plaintiff, he had a "pretty good working relationship" with his co-workers at the Fairborn Post Office, and they became "family."  He believes his co-workers respected both him and his work.  In fact, the Plaintiff testified that there was not anyone at the Fairborn Post Office who treated him with disrespect or disrespected his work, or treated him rudely.

Plaintiff sought Equal Employment Opportunity ("EEO") counseling as a result of being placed on standby time, and then filed a formal complaint with the Equal Employment Opportunity Commission ("EEOC") on January 18, 2011.  Plaintiff retired from the Postal Service in June 2011, taking a disability retirement.  On January 14, 2011, a Final Agency Decision found no evidence of discrimination.

## II.  STANDARD OF REVIEW

A motion for summary judgment should be granted if the evidence submitted to the Court demonstrates that there is no genuine issue as to any material fact and that the movant is entitled to summary judgment as a matter of law.  Fed. R. Civ. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*,

477 U.S. 242, 247-248 (1986). "Summary judgment is only appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Keweenaw Bay Indian Comm. v. Rising*, 477 F.3d 881, 886 (6th Cir. 2007) (quoting Fed. R. Civ. P. 56(c)). "Weighing of the evidence or making credibility determinations are prohibited at summary judgment - rather, all facts must be viewed in the light most favorable to the non-moving party." *Id*.

Once "a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading[.]" *Viergutz v. Lucent Technologies, Inc.*, 375 Fed. Appx. 482, 485 (6th Cir. 2010) (citation omitted). Instead, the party opposing summary judgment "must - by affidavits or as otherwise provided in this rule - set out specific facts showing a genuine issue for trial." *Id*. (citation omitted). In fact, Fed. R. Civ. P. 56(c) states that "[a] party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . or . . . showing that the material cited do not establish the absence . . . of a genuine dispute[.]" Where "a party fails . . . to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e)(2).

Finally, "there is no duty imposed upon the trial court to 'search the entire record to establish that it is bereft of a genuine issue of material fact.'" *Buarino v. Brookfield*

*Twp. Trustees*, 980 F.2d 399, 404 (6th Cir. 1992) (citations omitted). Instead, "[i]t is the attorneys, not the judges, who have interviewed the witnesses and handled the physical exhibits; it is the attorneys, not the judges, who have been present at the depositions; and it is the attorneys, not the judges, who have a professional and financial stake in case outcome." *Id.* at 406. In other words, "the free-ranging search for supporting facts is a task for which attorneys in the case are equipped and for which courts generally are not." *Id.*

### III. ANALYSIS

Defendant argues that summary judgment is proper because Plaintiff cannot demonstrate a *prima facie* case of either race or disability discrimination. Specifically, Defendant argues that Plaintiff was not subjected to any adverse employment action and that no evidence exists showing that Defendant treated any similarly situated employee more favorably than Plaintiff.

Because Plaintiff presents no direct evidence of discrimination, his claims are analyzed under the framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Carson v. Patterson Companies, Inc.*, 423 Fed. Appx. 510, 513 (6th Cir. 2011). Under this framework, Plaintiff bears the initial "burden of establishing a *prima facie* case of race discrimination[.]" *Id.*

To establish a *prima facie* case of race discrimination, Plaintiff must show that: "(1) he is a member of a protected class; (2) he was qualified for his job; (3) he suffered an adverse employment decision; and (4) he was replaced by a person outside the

- 6 -

protected class or treated differently than similarly situated non-protected employees." *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 391 (6th Cir. 2008) (citations omitted).

To successfully demonstrate a *prima facie* case of disability discrimination, Plaintiff must evidence "that: (1) the plaintiff is disabled, (2) [he] is otherwise qualified for the job, with or without reasonable accommodation, (3) [he] suffered an adverse employment action, (4) the employer knew or had reason to know of the plaintiff's disability, and (5) either the plaintiff was treated less favorably than similarly situated non-disabled employees, or, after the adverse employment action, the plaintiff was replaced by a non-disabled person or the plaintiff's position remained open." *Brady v. Potter*, 273 Fed. Appx. 498, 502 (6th Cir. 2008) (citing *Jones v. Potter*, 488 F.3d 397, 404 (6th Cir. 2007)).

Defendant first argues that Plaintiff cannot show that he suffered an adverse employment action. "An adverse employment action 'constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'" *Johnson v. Franklin Farmers Co-Op.*, 378 Fed. Appx. 505, 508 (6th Cir. 2010) (citations omitted). The Sixth Circuit holds "that '*de minimis* employment actions are not materially adverse and, thus, not actionable.'" *Kyle-Eiland v. Neff*, 408 Fed.Appx. 933, 941 (6th Cir. 2011) (citation omitted). Adverse employment actions are "something more than 'petty slights, minor annoyances, and simple lack of good manners.'" *Id.* (citation omitted).

Plaintiff argues that both being placed in the NRP and having to clock into standby time on occasion constitute adverse employment actions.  However, Plaintiff admits that, after being placed in the NRP, he worked approximately six hours a day, the maximum amount of time allowed pursuant to his medical restrictions, and that, between September 7, 2010 and his retirement, he received approximately thirty to thirty-six hours of work a week as a part-time flexible ("PTF") Mail Processing Clerk.  Plaintiff also admits that his pay stayed the same and that he continued receiving the same annual leave, sick leave, health insurance, life insurance and Thrift Savings Plan benefits.  Finally, while Plaintiff occasionally clocked into standby time, he presents no argument as to why such fact equates to an adverse employment action.

Simply put, Plaintiff presents nothing more than perfunctory, undeveloped and conclusory contentions that either being placed in the NRP or clocking into standby time on occasion amount to an adverse employment action.  As noted by the Sixth Circuit:

> [I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.  It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.

*McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) (citation omitted).  Plaintiff's perfunctory, undeveloped conclusory contentions fail to create a genuine issue of material fact as to whether he suffered an adverse employment action.  Summary Judgment in favor of Defendant is proper on this basis alone.

Even assuming Plaintiff suffered an adverse employment action, he presents no evidence or argument, beyond conclusory assertion, to satisfy his burden of showing that

Defendant treated similarly situated employees more favorably. To satisfy this burden "plaintiff must show that the 'comparables' are similarly-situated *in all respects*." *Mitchell v. Toledo Hospital*, 964 F.2d 577, 583 (6th Cir. 1992) (emphasis in original) (citation omitted). Such a burden, however, does not require that Plaintiff "demonstrate an exact correlation between himself and others similarly situated[.]" *Bobo v. United Parcel Service, Inc.*, 665 F.3d 741, 751 (6th Cir. 2012) (citation omitted).

In addressing similarly situated employees, Plaintiff generally points to three allegedly disabled Caucasian coworkers and simply notes that none of those coworkers were required to go through the NRP. Plaintiff, however, makes no effort to show that any of these employees even qualified for the NRP. Plaintiff also states that he unaware of any Caucasian co-workers with a disability being placed standby time. However, Plaintiff's lack of knowledge with regard to this issue is not evidence that any of the purportedly comparable employees were never placed on standby time.

Aside from generally describing three co-workers as disabled Caucasians, Plaintiff points to no other facts, and presents no specific argument, as to how any of these co-workers were similar to Plaintiff in the relevant aspects of their employment. Again, Plaintiff's wholly perfunctory, undeveloped and conclusory assertion that these three employees are similarly situated to him simply because they were disabled co-workers is insufficient to create an issue of material fact. *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) (stating that "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed

waived[,]" and that "[i]t is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to ... put flesh on its bones").

For the foregoing reasons, Plaintiff fails to demonstrate a *prima facie* case of either race or disability discrimination. Accordingly, Defendant's Motion for Summary Judgment is **GRANTED**.

### IV.  CONCLUSION

Because Plaintiff fails to evidence a genuine issue of material fact as to whether he suffered an adverse employment action or whether he was treated less favorably than similarly situated coworkers, he fails demonstrate a *prima facie* case of discrimination. Therefore, Defendant's Motion for Summary Judgment (Doc. 14) is **GRANTED**, and the Clerk shall entered judgment accordingly and terminate this case on the Court's docket.

**IT IS SO ORDERED**.


Date:  1/8/13                                                        *s/ Timothy S. Black*
                                                                     Timothy S. Black
                                                                     United States District Judge